## Illinois Central Railroad Company v. Harry Swisher.

1. EXPERT TESTIMONY—*What Is Not.*—A witness may testify as to the distance between objects or the distance from which a given object could be seen without having actually measured or made an estimate of it with his eye. Such is not expert testimony.

2. RISKS OF EMPLOYMENT—*When Assumed by the Employe.*—An employe can not recover for an injury suffered in the course of the business about which he is employed, from defective machinery, after he has knowledge of the defects and continues to work without promise or representation that the defect will be remedied. In such a case it will be presumed that he voluntarily assumed the risk and waived whatever obligations rested upon the employe to furnish complete and perfect appliances.

**Memorandum.**—Action for personal injuries. Appeal from the Circuit Court of Lee County; the Hon. JOHN D. CRABTREE, Judge, presiding. Heard in this court at the December term, 1893. Reversed and remanded. Opinion filed May 22, 1894.

The opinion states the case.

APPELLANT'S BRIEF, WM. BARGE, ATTORNEY.

"It is competent for a witness to state his opinion in evidence when the primary facts on which it is founded are of such a nature that they can not be adequately reproduced or described to the jury so as to enable another than the actual observer to form an intelligent conclusion from them." Rogers on Expert Testimony, pp. 1, 6, 7 and 8; Rapalje on Law of Witnesses, Sec. 288; Lawson on Expert and Opinion Evidence, pp. 460, 461; Underwood v. Waldron, 33 Mich. 232.

So, a witness may state, if a bell or whistle had sounded, or a conversation taken place, he would have heard it. C. & A. R. R. Co. v. Dillon, 123 Ill. 570; Maynard v. The People, 135 Ill. 416, 434.

If using the switches without lamps was dangerous, it was as well known, or by reasonable care and observation could have been, to the plaintiff as to the defendant. It was not a secret defect, but something that could be as well seen by the plaintiff as by the defendant. Simmons v. Chicago & Iowa R. R. Co., 110 Ill. 347; Penn Co. v. Lynch, 90 Ill. 333; Clark v. C., B. & Q. R. R. Co., 92 Ill. 47; I., B. & W. Ry. Co. v. Flanagan, 77 Ill. 365; Naylor v. C. & N. W. Ry. Co., 53 Wis. 661; Camp Point Mfg. Co. v. Ballou, 71 Ill. 417; St. L. & L. E. Ry. Co. v. Britz, 72 Ill. 256; C. & A. R. R. Co. v. Munroe, 85 Ill. 25; Wood's Master and Servant, Sec. 326;

Wright v. N. Y. C. R. R. Co., 25 N. Y. 562, 566; C., B. & Q. R. R. Co. v. Smith, Adm'x, 18 Brad. 119; Buzzell v. Laconia Mfg. Co., 48 Me. 113; Hughes v. Winona & St. Peter R. R. Co., 27 Minn. 137; Priestly v. Fowler, 3 M. & W. 1.

As between employer and employe, the latter assumes all the usual known dangers incident to the employment, and that he also takes upon himself the hazard of the use of defective tools and machinery, if, after his employment, he knows of the defect, but voluntarily continues in the employment without objection, are familiar rules of law, often recognized by the decisions of this and other courts. Herdman-Harrison Milling Co. v. Spehr, 145 Ill. 329; C. & E. I. R. R. Co. v. Geary, 110 Ill. 388; Simmons, Admr., v. C. & T. R. R. Co., 110 Ill. 340; C. & A. R. R. Co. v. Munroe, 85 Ill. 25; I., B. & W. R. R. Co. v. Flanigan, 77 Ill. 365; St. Louis & S. E. Ry. Co. v. Britz, 72 Ill. 356; Pennsylvania Co. v. Lynch, 90 Ill. 333; Honner v. I. C. R. R. Co., 15 Ill. 550; Missouri Furnace Co. v. Abend, 107 Ill. 51; Clark v. C., B. & Q. R. R. Co., 92 Ill. 43; T. W. & W. Ry. Co. v. Black, 88 Ill. 112; C., R. I. & P. R. R. Co. v. Lonergan, 118 Ill. 141; C. & N. W. Ry. Co. v. Donahue, 75 Ill. 106; I. C. R. R. Co. v. Cox, 21 Ill. 20; Moss et al. v. Johnson, 22 Ill. 633; T. W. & W. R. R. Co. v. Durkin, 76 Ill. 395; Gartland v. T. W. & W. R. R. Co., 67 Ill. 498; Chicago & Alton R. R. Co. v. Bragonier, 119 Ill. 67; Ill. Cen. R. R. Co. v. Jewell, Admx., 46 Ill. 99; W. St. L. & P. Ry. Co. v. Deardorff, 14 Brad. 401; I. C. R. R. Co. v. Morrisey, 45 Ill. App. 127; C., B. & Q. R. R. Co. v. Merekes, 36 Ill. App. 195; Kolb v. Sandwich Ent. Co., 36 Ill. App. 419; Evans v. Chessmond, 38 Ill. App. 615; W. S. Rolling Stock Co. v. Chadwick, 35 Ill. App. 474, 475; W. St. L. & P. Ry. Co. v. Conkling, 15 Brad. 160; C., B. & Q. R. R. Co. v. Smith, 18 Brad. 119; W., St. L. & P. Ry. Co. v. Gordon, 17 Brad. 66; W., St. L. & P. Ry. Co. v. Thompson, 15 Brad. 117; Washington, etc., Railroad Co. v. McDade, 135 U. S. 554; Kohn v. McNulta, 147 U. S. 238 on p. 241; Tuttle v. Milwaukee Ry. Co., 122 U. S. 189; Fisk v. Fitchburg R. Co., 158 Mass. 238; Leary v. Boston & A. R. R. Co., 139 Mass. 580; Lovejoy v. Boston & A. R. R. Co., 125 Mass. 79;

Ladd v. New Bedford R. R. Co., 119 Mass. 412; Sweeney v. Berlin & Jones Env. Co., 101 N. Y. 520; Appel v. B. & N. Y. & P. R. Co., 111 N. Y. 550; McQuigan v. D. L. & W. R. R. Co., 122 N. Y. 618; N. Y. etc., R. Co. v. Lyons, 119 Penn. 324; Brossman v. Lehigh Valley R. R. Co., 113 Penn. 490; Hayden v. The Smithville Mfg. Co., 29 Conn. 548; Umback v. Lake Shore & Mich. S. R. R. Co., 83 Ind. 191; Naylor v. C. & N. W. Ry. Co., 53 Wis. 661; Shultz v. C. & N. W. Ry. Co., 67 Wis. 616; Muldowney v. I. C. R. R. Co., 39 Iowa, 615; Burns v. Ch., Mil. & St. Paul Ry. Co., 69 Iowa, 450; Doyle v. St. Paul, Minn. & Man. Ry. Co., 42 Minn. 791; Hughes v. Winona & St. Peter R. Co., 27 Minn. 137, approved by Supreme Court; Sullivan v. Louisville Bridge Co., 9 Bush. (Ky.), 81; Bussell v. Laconia Mfg. Co., 48 Me. 113; M. E. R. R. Co. v. Austin, 40 Mich. 247; McGlynn v. Brodie et al., 31 Cal. 376; Sowden v. Idaho Q. M. Co., 55 Cal. 443; Sweeney v. Cen. Pac. R. R. Co., 57 Cal. 15; M. R. & L. E. R. R. Co. v. Barber, 5 Ohio St. 541; Seymour v. Maddox, 5 Eng. L. & Eq. 265; Priestly v. Fowler, 3 M. & W. 1; Wharton on Neg., Sec. 214; Wood's Master and Servant, Secs. 335, 336; Pierce on Railroads, 379 (1881); Bishop, Non-Contract Law, Secs. 675, 677; Thompson on Negligence, Vol. 2, p. 1008.

Appellee's Brief, Sherwood Dixon, S. H. Bethea and S. B. Pool, Attorneys.

A servant does not necessarily waive his right to recover for injuries received from defective machinery or appliances, by continuing in the service. Moline Plow Co. v. Anderson, 19 Ill. App. 417; Anderson Pressed Brick Co. v. Sobkowiak, 38 Ill. App. 531; C. & A. R. R. Co. v. Mathews, 39 Ill. App. 541; T., St. L. & K. C. R. R. Co. v. Bailey, Admr., 43 Ill. App. 293; Hawley v. N. C. Ry. Co., 82 N. Y. 370; Huhn v. Mo. P. Ry. Co., 4 S. W. Rep. 937; S. C., 92 Mo. 440; Soeder v. St. L. & I. M. Ry. Co., 13 S. W. Rep. 714 (Mo.); S. C., 100 Mo. 673; O'Rorke v. U. P. Ry. Co., 22 Fed. Rep. 189; N. J. & N. Y. R. R. Co. v. Young, 49 Fed. 723; Dwyer v. St. & S. F. R. R. Co., 52 Fed. 87; Col. & Mid.

Ry. Co. v. O Brien, 27 Pac. Rep. 701; 16 (Colo.) 219; Fitz-gerald v. Conn. River Paper Co., 29 N. E. Rep. 464; 155 Mass. 155; Mahoney v. Dore, 30 N. E. Rep. 366; 155 Mass. 513.

The opinion of a witness who neither knows nor can know more about the subject-matter than the jury, and must draw his deductions from facts already in the posses-sion of the jury, is not admissible. But that an experienced railroad man could not be asked the following question: " Suppose there was a man standing by the side of a switch that night, and holding a lantern, such as you have described, a foot or two from the ground, how far away from the target could the man see the top of the target, or any part of the target?" is not sustained by the authorities. Rogers on Expert Testimony, 27–29; Libby, McNiel & Libby v. Scherman (Ill.), 34 N. E. Rep. 801; Underwood v. Waldron, 33 Mich. 232.

MR. PRESIDING JUSTICE HARKER DELIVERED THE OPINION OF THE COURT.

Appellee, while acting as fireman on a passenger engine on appellant's road, sustained injuries in a collision for which he sued and recovered a judgment for $9,375.

It appears from the evidence that appellee, at the time of the injury, had been in the service of appellant as locomotive fireman for about two years; that he had for a year been firing upon the Dubuque and La Salle passenger train which on its south bound trip was due at Sublette at 6.55 P. M.; that at Sublette there are one main track, one freight house track, one passing track, and two cross over tracks; that the freight house track is west and the passing track is east of the main track; that the passing track is 2,969 feet long; that about 1,300 feet south of the north connection of the passing and main tracks the cross over tracks passed from the main to the passing track and that six switches were used to make the connection between the different tracks. Six or eight months prior to the 3d of May, 1892, the day of the accident, the company replaced the drop lever switches which had been in use at Sublette with rotary switches

excepting the one connecting the south end of the crossing with the passing track. The rotary switch is so constructed as to allow the use of the lamp with which to indicate in the night time whether the switch is open or closed. Lamps had not been supplied for the rotary switches at Sublette however, and they had for the six or eight months been used without them, in the same manner as had been used the old drop lever switches. Targets were on the switches about seven feet from the ground. Those indicating that the main track was clear were of a circular form, eighteen inches in diameter and painted white. Those indicating that the main track was not clear were arrow shaped, one foot across the face, two feet long, and painted red.

Soon after seven o'clock on the evening of the day mentioned, the passenger train on which appellee was firing, going at a rapid rate of speed toward the south, left the main track upon the north cross over track, and collided with a north bound freight train standing upon the passing tracks. The engineer was killed and appellee very severely injured. The collision occurred by reason of the crossing switch being open. How long it had been open before the passenger train reached it, or by whom it was opened, does not appear from the evidence. Appellee was at the time engaged in oiling the valves and not looking ahead.

The negligence charged against the railroad company was failure to supply the rotary switches with lamps to be used in the night time. Such negligence it is claimed was the proximate cause of the collision, for had they been supplied, and had one on the switches where the train left the main track been lighted, it would have shown the engineer that the track was not clear and thereby enabled him to stop his train in time to avoid the collision. Such is the theory of appellee's case as set forth in his declaration, as shown by his evidence upon the trial and as contended for in this court. Upon the other hand it is contended by appellant that the failure to supply the switch with a lamp was not the proximate cause of the collision; but that it was attributable to the neglect of the engineer, a fellow-servant of appellee, in failing to discover that the target signal indicated that the

switch was open. It is contended that there was ample light to enable the engineer to see the target and stop his train before reaching it.

There could be no recovery under the pleadings in the case if at the time of the collision there was sufficient light to enable the engineer to discover the target signal. Whether he neglected to look for it or after seeing it in time to stop his train he did not attempt to do so would be immaterial. The cause of the injury would be the negligence of a fellow-servant. The most important question of fact in dispute was that of light. Upon this question many witnesses were examined and there was considerable conflict. A number of them who were on the ground at the time of the accident and stated when it occurred, the condition of the atmosphere and light, the kind and locality of the switches, were asked how far they could have seen the switch target in question at the time. The question was propounded in various forms but ruled out by the court upon the ground that such testimony was not proper unless the witness at the time of the accident actually looked to see how far he could see the target. In our opinion the proposed testimony was entirely proper. To hold that a witness could not testify as to the distance between objects, or the distance from which a given object could be seen, unless he had actually measured or made an estimate of it with his eye, would entail great expense and delay and in some cases result in a total defeat of justice. It was not expert testimony. It related to a fact, about which any one acquainted with the condition of the atmosphere and light at the time, the switch and the track, and possessed of ordinary intelligence and eyesight, could give his opinion. Our view is supported by the following authorities: Chicago & Alton Railroad Co. v. Beck, 17 Ill. App. 17; Innis v. Steamboat "Senator," 4 Cal. 5; Gulf, C. & S. F. Ry. Co. v. Washington, 4 M. S. App. 121.

It was in evidence that appellee had been in appellant's employ for two years, making daily runs through Sublette. If he was observant he knew that the rotary switch had

taken the place of the drop lever switch, and had been used without lamps for a period of six or eight months and was being so used at the time of the accident. Whether appellee should be considered as taking the risk usually incident to an operation of the rotary switch without a light was a mooted and important question upon the trial, and one requiring carefully prepared instructions. The first instruction given in behalf of appellee entirely ignored this feature of the case and told the jury that if the company failed to use reasonable care and caution in providing suitable and safe appliances and to exercise reasonable care and caution in keeping them in safe condition for use, and in consequence thereof an employe, while in the exercise of reasonable care and caution, was injured, then the company was liable. There are other objections to the instructions, but this is sufficient to condemn it. The fourth instruction given for appellee is confusing and in conflict with the sixth, seventh and eighth instructions given for appellant. It in effect told the jury that if appellee knew no lighted lamp was used on the switch at Sublette, that would not prevent him recovering for the injury. As we understand the law, an employe can not recover for an injury suffered in the course of the business about which he is employed, from defective machinery, after he has knowledge of the defects, and continues to work without promise or representations that the defects will be remedied. In such a case it will be presumed he voluntarily assumed the risk and waived whatever obligations rested upon the employe to furnish complete and perfect appliances. Camp Point Mfg. Co. v. Ballou, 71 Ill. 417; C. & N. W. Ry. Co. v. Donohue, 75 Ill. 106; Simmons v. C. & T. R. R. Co., 110 Ill. 340; Stafford v. C., B. & Q. R. R. Co., 114 Ill. 244; Herdman-Harrison Milling Co. v. Spehr, 145 Ill. 329.

As the case will be submitted to another jury, we refrain from expressing an opinion on the other points urged for a reversal. The errors of the court in denying appellant the proposed evidence mentioned, and in giving appellee's first and fourth instructions, are sufficient to reverse the judgment. Reversed and remanded.